UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY RHODES,

        Plaintiff,        Civil Action No.: 14-13716
                              Honorable Avern Cohn
        v.                    Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

### REPORT AND RECOMMENDATION
### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 15, 18]

    Plaintiff Anthony Rhodes appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Although the ALJ's decision could have been better crafted, the Court finds no error warranting remand. For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion **[R. 18]** be **GRANTED**;

- Rhodes's motion **[R. 15]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Claimant's Background and Claimed Disabilities

At the time of application, Rhodes was 52 years old, with a seventh grade education, and had previously worked in maintenance, general labor and painting. He alleges disability due to neck and back pain stemming from an automobile accident, hand pain, and mental impairments.

### B. Procedural History

Rhodes filed applications for DIB and SSI, alleging disability as of August 8, 2011. [R. 12-5, Tr. 153-158]. The claims were denied initially, and Rhodes filed a timely request for an administrative hearing, held on May 6, 2013, at which both he and a vocational expert ("VE") testified. [R. 12-2, Tr. 31-68; R. 12-4, Tr. 95-103]. In a May 30, 2013 written decision, the ALJ found Rhodes not disabled. [R. 12-2, Tr. 12-30]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review. [*Id.*, Tr. 1-5]. Rhodes timely filed for judicial review. [R. 1].

### C. The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability." *See*

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

3

reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Rhodes was not disabled. At step one, the ALJ determined that Rhodes had not engaged in substantial gainful activity since his alleged onset date. [R. 12-2, Tr. 17]. At step two, he identified severe impairments of low back disorder, schizoaffective disorder, major depressive disorder, personality disorder and substance abuse disorder. [*Id.*, Tr. 18]. He found that other impairments, including Rhodes's cervical disc disorder, mild carpal tunnel syndrome, headaches and urinary disorder were not severe. [*Id.*].

At step three, the ALJ concluded that none of Rhodes's impairments, either alone or in combination, met or medically equaled a listed impairment. [*Id.*, Tr. 19-20]. In evaluating Rhodes's mental impairments, the ALJ found that Rhodes suffered from no more than moderate restrictions in activities of daily living, moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence and pace, with no episodes of decompensation. [*Id.*].

Next, the ALJ assessed Rhodes's residual functional capacity ("RFC") finding him capable of light work that permitted alternating between sitting and standing up to three times an hour, did not require climbing of ladders, ropes or scaffolds, and only occasional climbing of ramps and stairs. [*Id.*, Tr. 20]. Rhodes also could only occasionally stoop, kneel, or crawl, and needed to avoid all hazards like dangerous machinery and unprotected heights. [*Id.*]. He was further limited to simple, routine tasks with no more than brief, superficial interaction with the public and co-workers and no more than occasional supervision. [*Id.*].

At step four, the ALJ concluded that, based on the foregoing RFC, Rhodes could not return to his past relevant work. [*Id.*, Tr. 25]. However, at step five, with the assistance of VE testimony, the ALJ determined that there were a significant number of other jobs in the national economy that a hypothetical claimant matching Rhodes's profile could perform, and thus he was not disabled. [*Id.*, Tr. 25-26]. These jobs included electrical accessories assembler (1,200 jobs in the region), light fixture inspector (1,500 jobs) and hand packer (1,200 jobs). [*Id.*, Tr. 26].

## II. STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence

5

and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

With these standards in mind, this Court finds that the ALJ's determination that Rhodes is not disabled is supported by substantial evidence.

### III. ANALYSIS

Rhodes's brief alleges numerous errors in the ALJ's decision. Some alleged errors seriously misrepresent the ALJ's decision (i.e. claiming that

6

the ALJ offered "absolutely no rationale nor discussion of Mr. Rhodes' medical problems" and that the RFC included "no non-exertional limitations whatsoever . . . that would account for his severe [mental] impairment finding.") [R. 15, PgID 484]. Other arguments are barely supported by reference to record evidence; Rhodes cites to only one page of the medical record while the remaining references are to his own testimony or to the ALJ's decision. [*Id.*, PgID 484-89]. Such practice could permit the Court to find Rhodes has waived most, if not all, of his arguments. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted). However, in light of the Court's independent obligation to ensure the ALJ's decision is supported by substantial evidence, the Court broadly addresses Rhodes's allegations.

### A. ALJ's Evaluation of the Record Evidence

Rhodes takes issue with the ALJ's evaluation of the record evidence, arguing that the ALJ cherry-picked the evidence, failed to provide support for the weight given to various opinions, and failed to articulate the basis for

7

his RFC.

The Sixth Circuit has cautioned that an allegation of "cherry-picking" is "seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014). That caution is especially pertinent here because Rhodes fails to cite any piece of objective medical evidence that was not considered by the ALJ. The Court rejects Rhodes's invitation to reweigh all of the evidence on his behalf. Nonetheless, the Court has reviewed the record and finds that, while the ALJ omitted from his discussion reference to some records, none warrant reversal on the facts of this case.

The most pertinent omission pertained to Rhodes's diagnosis of cervical disc herniation. A 2011 MRI showed cervical multilevel disc desiccation, superimposed disc herniation, and multilevel mild bilateral inferior nerve root recess encroachment.[3] [R. 12-7, Tr. 287-88]. Treatment notes from February 2012 appear to recommend that Rhodes undergo "ACDF," anterior cervical discectomy and fusion. [*Id.*, Tr. 273-74]. A check-box form completed around this time, apparently by a physician's assistant ("PA") in the same practice, indicated that Rhodes was disabled from work for two months based on cervical radiculopathy and prescribed

---

[3] Rhodes does not even mention this opinion in his brief, permitting this Court to find any error waived.

8

housekeeping and transportation replacement services. [*Id.*, Tr. 269]. The Court acknowledges that the ALJ probably should have discussed these records, particularly the PA's disability note. SSR-06-03P states that opinions from treating sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." 2006 SSR LEXIS 5, *8, 2006 WL 2329939, at *3 (Aug. 9, 2006).

However, any error on the part of the ALJ in failing to address the PA's opinion was harmless as the treatment notes accompanying the PA's opinion offer no objective findings to support that Rhodes required additional limitations; they noted 5/5 muscle strength in the upper extremities and +2/4 reflexes bilaterally. [R. 12-7, Tr. 274]. Additionally, during the same month in which the PA described Rhodes as "disabled," he underwent a consultative exam during which a physician found no symptoms associated with cervical disorder or radiculopathy, full cervical range of motion, full upper extremity muscle strength and grip strength, and no neurological or sensory deficits. [R. 12-7, Tr. 234-41]. Likewise, physical therapy notes from the beginning of February showed a full range of motion and strength of 4+/5. [*Id.*, Tr. 294]. Finally, at the hearing (more

than one year after the ACDF was recommended), Rhodes did not testify that he ever underwent that surgery or even that he was having neck pain. [R. 12-2, Tr. 53 (explaining that his pain was located in his lower and upper back)]. Thus, any error on the part of the ALJ in failing to discuss these treatment notes is harmless.

Rhodes argues that "there is absolutely no account" for the opinion of Dr. Terrance Mills, Ph.D., the consultative mental examiner, in the ALJ's RFC. [R. 15, PgID 485]. Dr. Mills found that Rhodes was "able to understand, retain and follow simple directions," although "at times he needed things repeated and explained," and also "would appear to have difficulty maintaining standards of safety issues and work routines due to his current mental health issues." [R. 12-7, Tr. 246]. Rhodes also claims that the RFC does not account for this opinion or for his diagnoses of schizoaffective, major depressive and personality disorders. These representations of the ALJ's RFC analysis are factually untrue.

The ALJ did acknowledge and discuss at length Rhodes's diagnoses of mental impairments, including those from Dr. Mills, but concluded that "[t]he objective findings and symptoms have been reasonably considered within the above residual functional capacity, and there is no evidence to support further mental restrictions." [R. 12-2, Tr. 23]. The ALJ included

10

limitations within the RFC that addressed Rhodes's mental impairments, including that he "must avoid all hazards like dangerous machinery and exposure to unprotected heights," that he was "limited to simple, routine tasks," and that he could have only limited interaction with the public, co-workers and supervision.[4] [Id. at Tr. 20]. Rhodes does not specify what additional limitations he believes should have been imposed. Thus, the Court finds no reversible error.

> B.   **ALJ's Credibility Determination**

The ALJ found Rhodes's claim of total disability to be not entirely credible. Rhodes argues that, in making that finding, the ALJ failed to address his complaints of fatigue and pain, his need to lie down, "or severe medication side effects which include balance issues . . . ." [R. 15, PgID 486]. Additionally, according to Rhodes, the ALJ improperly relied on his appearance and demeanor at the hearing, and based his credibility determination on feelings rather than conducting a proper analysis as required by the regulations. Credibility determinations of witnesses are within the province of the ALJ, and will not be overturned "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). At

---

[4] Notably, the DDS consultant reviewer who interpreted Dr. Mills's opinion at the initial stage found that it only required a limitation to simple, unskilled work, which was part of the ALJ's RFC. [R. 12-3, Tr. 72, 75-76].

the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. Here, Rhodes has not proffered a compelling reason to overturn the ALJ's credibility determination, and that determination finds support in the record.

Rhodes's argument that the ALJ did not mention his specific complaints of physical and mental impairments is untrue. [*See* R. 12-2, Tr. 21]. The Court notes that the ALJ did misstate some of Rhodes's testimony when claiming that he alleged "no impairment in his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, stair climb, follow instructions, and us[e] his hands." [*Id.*, Tr. 24]. In truth, Rhodes testified that he could lift only 10 to 15 pounds for a short distance, could only stand or sit for a half-hour at a time, and that he could not reach above his head or behind his back. [*Id.* at Tr. 56-57]. However, no treating physician opined that Rhodes suffered from those functional limitations, and a consulting doctor found him capable of lifting, pushing and pulling up to 40 pounds and having no limitation with manipulation. [R. 12-7, Tr. 236]. The ALJ was required to factor in Rhodes's subjective complaints only to the "extent to which [his] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). For that reason, the lack of physical restrictions from a

physician is considered substantial evidence supporting the ALJ's determination that Rhodes is not as limited as he claims. *Hamper v. Comm'r of Soc. Sec.*, 714 F. Supp. 2d 693, 705 (E.D. Mich. 2010).

Further, contrary to Rhodes's argument, the ALJ did conduct a credibility analysis. He stated that Rhodes was less than fully credible because, despite his allegations of isolative behavior, disabling depression and physical pain, Rhodes admitted to being able to perform some household chores (cleaning and laundry), go shopping, use public transportation, and watch television. [R. 12-2, Tr. 19, 21, 23-24]. The ALJ also noted that Rhodes got along well with his brother with whom he lived, as well as the examiners and interviewers of record, and had never been laid off due to problems getting along with others. [*Id.*]. Additionally, the ALJ considered that Rhodes exhibited no pain behavior at the hearing, although he gave this factor only "slight weight" in his overall credibility analysis. [*Id.*, Tr. 24].

The ALJ was somewhat misleading in characterizing some of Rhodes's alleged admissions of his activities. While the ALJ described Rhodes as admitting to doing household chores and shopping, Rhodes testified that his brother usually does his laundry, that he does not cook (although he heats up food in the microwave), and that he goes grocery

13

shopping only under his brother's supervision about twice per month. [R. 12-2, Tr. 44-46].[5] However, the harmless error analysis applies to credibility determinations. *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012). The ALJ's mischaracterization of some of Rhodes's testimony is harmless because the lack of medical evidence that he is as limited as he claims constitutes substantial evidence. *Hamper,* 714 F. Supp. at 705.

Moreover, when describing the evidence of Rhodes's mental impairment, the ALJ accurately summarized the reports of clinicians that Rhodes had an unremarkable general appearance, posture, motor status, speech, affect, perception, cognition, and good insight and judgment; that he was oriented and did not present as impaired; that he was able to maintain his own appointments, monitor his own medication, advocate for and transport himself; and showed fair hygiene and good motility, grooming and overall appearance. [R. 12-2, Tr. 22-23; R. 12-7, Tr. 227, 230; R. 12-8, Tr. 370, 372, 377, 383, 415-26, 430-31]. These reports constitute substantial evidence in support of the ALJ's credibility determination.

The Court also rejects Rhodes's complaint regarding the ALJ's

---

[5] On the other hand, Rhodes's testimony that he does not watch much television because he has to lie down contradicts his earlier report of daily activities, on which he reported watching movies and television "everyday most of the day." [R. 12-2 at Tr. 49; R. 12-6, Tr. 194].

14

reliance on his appearance and demeanor at the hearing.  Although it would have been error if that were the sole reason for rejecting Rhodes's credibility, the ALJ did not err in citing it as one factor to which he gave slight weight.  See *Johnson v. Comm'r of Soc. Sec.*, 210 F.3d 372, *4 (6th Cir. Mar. 22, 2000) (unpublished) (finding no error where ALJ's reference to hearing demeanor not only factor in credibility assessment).

    Finally, the record does not support Rhodes's argument that the ALJ should have given weight to his statements that he needed to lie down frequently, that his hands swell, and that he has a loss of balance due to medication side effects.  Rhodes testified that he lies down "most of the time," but offered no reason for doing so, let alone describe the amount of time he must lie down or in what intervals.  [R. 12-2, Tr. 49].  While he testified to stumbling and catching himself four to five times a week, he did not testify, and the record does not otherwise reflect, that such incidents were the result of medication.  [*Id.*, Tr. 53-54].  Furthermore, five months of physical therapy notes consistently show that Rhodes maintained good balance.  [R. 12-7, Tr. 294-335].  With respect to Rhodes's testimony that his hands would occasionally swell and were painful, he did not state that he suffered any limitations as a result, and there is no record evidence that he had any.  To the contrary, the record reflects that Rhodes maintained

15

full grip strength. [R. 12-2, Tr. 57; R. 12-7, Tr. 240]. The Court finds no error in the ALJ's omission of these subjective statements.

### C. ALJ's Non-Exertional Limitations

Rhodes argues that the ALJ erred in failing to propose a hypothetical question to the VE that specifically accounted for the interval of time Rhodes needed for alternating between sitting and standing. However, the ALJ did specifically pose a hypothetical question about a claimant who needed to alternate between sitting and standing up to three times an hour, and the VE testified that there were jobs for such a claimant. [R. 12-2, Tr. 64-65]. Rhodes does not claim that this restriction is not sufficient to accommodate his limitations and he testified that he was able to sit and stand each for about a half an hour at a time. [*Id.*, Tr. 56]. Rhodes's argument therefore lacks merit.

### IV. CONCLUSION

Although the ALJ's decision could have been better-crafted, the Court finds that no more than harmless error under the deferential consideration afforded the ALJ's decision. Furthermore, an independent review of the record finds that the ALJ's decision is supported by substantial evidence. For these reasons, the Court **RECOMMENDS** that Rhodes's Motion for Summary Judgment **[R. 15]** be **DENIED**, the Commissioner's Motion [R.

**18]** be **GRANTED**, and this case be **AFFIRMED**.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: October 7, 2015

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 7, 2015.

s/Marlena Williams  
MARLENA WILLIAMS  
Case Manager